UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A͟URAMET I͟NTERNATIONAL, LLC, and
A͟URAMET T͟RADING, LLC,

      Plaintiffs,

v.

C.R. M͟ETALS, ET AL.,

      Defendants.

_____/

Case No. 16-cv-11177

U͟NITED S͟TATES D͟ISTRICT C͟OURT J͟UDGE
G͟ERSHWIN A. D͟RAIN

U͟NITED S͟TATES M͟AGISTRATE J͟UDGE
A͟NTHONY P. P͟ATTI

**O͟PINION A͟ND O͟RDER G͟RANTING M͟OTION T͟O S͟TAY P͟ROCEEDINGS [32],
H͟OLDING M͟OTION F͟OR I͟MMEDIATE P͟OSSESSION O͟F C͟OLLATERAL P͟RIOR T͟O
F͟INAL J͟UDGMENT [6] A͟ND M͟OTION T͟O I͟NTERVENE [44] I͟N A͟BEYANCE, A͟ND
D͟ENYING R͟EQUEST F͟OR S͟ANCTIONS**

**I. I͟NTRODUCTION**

On March 31, 2016, Auramet International, LLC and Auramet Trading, LLC ("Auramet" or "Plaintiffs") commenced the instant action against C.R. Metals, C.R. Hill Company, Gregory Koukoudian, Deborah Koukoudian, and Renee Koukoudian (collectively, "Defendants"). *See* Dkt. No. 1. In the Complaint, Plaintiffs allege that, over a period of months, Defendants removed approximately 4,000 ounces of platinum from Plaintiffs' Brink's vault in Detroit, replacing the platinum with metals that have little or no value. *Id.* at 2 (Pg. ID No. 2). Plaintiffs' Complaint includes fifteen claims against Defendants, including one federal claim

-1-

alleging that Defendants' conduct constituted money laundering and racketeering activity in violation of 18 U.S.C. § 1956. *Id.* at 26–27 (Pg. ID No. 26–27).

Presently before the Court are Defendant Gregory Koukoudian's Motion for Stay of Proceedings, Plaintiffs' Motion for Immediate Possession of Collateral Prior to Final Judgment, ICBC Standard Bank PLC's Motion to Intervene, and Defendant Renee Koukoudian's request for Rule 11 Sanctions. *See* Dkt. No. 6, 18, 32, 44. The Court previously denied Plaintiffs' request for a temporary restraining order. Dkt. No. 9. Plaintiffs also filed a Motion for Preliminary Injunction, which has been resolved between the parties out of court. The Court entered the parties' Order for Injunctive Relief on April 20, 2016. Dkt. No. 19.

The Court held a hearing on the Motion for Immediate Possession of Collateral Prior to Final Judgment and the Motion to Stay on August 1, 2016, and heard oral argument from parties.

## II. BACKGROUND

Plaintiffs are companies that finance mining projects, buy and sell precious metals, and offer financial advisory services. Defendants C.R. Metals and C.R. Hill are companies that engage in the buying, selling, and processing of metals, and selling of jewelry products. Defendants Gregory, Deborah, and Renee Koukoudian are all individuals whom Plaintiffs claim had ownership or directorial roles in one or both of the companies. However, Defendant Renee Koukoudian, Gregory

Koukoudian's sister, claims that she was only an employee of C.R. Hill and not an officer or director of either company. *See* Dkt. No. 18. Similarly, Deborah Koukoudian disputes that she had any business or ownership role in C.R. Metals and any business role in C.R. Hill prior to February 29, 2016. Dkt. No. 15, pp. 3–4 (Pg. ID No. 143–44). Defendant Gregory Koukoudian has not disputed that he was involved in both C.R. Metals and C.R. Hill as an owner and director.

Plaintiffs and Defendants entered into a business relationship in 2006, whereby Defendants would order precious metals from Plaintiffs to produce commercial grade alloy and other jewelry products. The parties contracted with Brink's US, a division of Brink's Incorporated ("Brink's"), to provide secure armored storage of Plaintiffs' inventory of precious metals at a vault in Detroit, Michigan.

The parties entered into a series of written contracts, including the most recent contract for the deposit, processing and/or sale of precious metals, titled "Precious Metals Supply Agreement and Purchase Contract & Bill of Sale," dated February 18, 2016 (the "Supply Agreement"). *See* Dkt. No. 1-2, pp. 1–5 (Pg. ID No. 39–43). Defendant C.R. Hill disputes that it was a party to any of the written contracts and claims that only C.R. Metals dealt directly with Plaintiffs. Dkt. No. 15, p. 6 (Pg. ID No. 146). Plaintiffs counter that "the history and course of dealing" in the business relationship between the parties, plus the fact that C.R. Metals and

C.R. Hill shared ownership and a building, means that C.R. Hill was also a party to the Supply Agreement and other contracts. Dkt. No. 33, pp. 3–4 (Pg. ID No. 320–21).

The Supply Agreement grants Plaintiffs a security interest in C.R. Metals' assets—including all inventory, accounts, equipment, and work in process and proceeds thereof—to secure C.R. Metals' obligations to Plaintiffs. Dkt. No. 1-2 at 3–4. C.R. Hill guaranteed the obligations of C.R. Metals and pledged "an identical security interest to the Buyer [C.R. Metals] to secure the same." The parties dispute whether this phrase had C.R. Hill grant the interest to C.R. Metals or to Plaintiffs. *See* Dkt. No. 15.

The Supply Agreement specified that Plaintiffs would deposit materials to the vault, including platinum, palladium, rhodium, gold, and other precious metals as requested by C.R. Metals. Upon payment, Plaintiffs would release the purchased metals from the vault. The Supply Agreement also permitted C.R. Metals to remove certain materials from the vault temporarily, prior to purchase, for the specific purpose of processing platinum into commercial grade alloy for resale. Once C.R. Metals finished processing the platinum into the commercial grade 90-10 alloy product (90% platinum, 10% iridium), it was required to return the processed alloy to the vault. The Supply Agreement does not allow C.R. Metals to

remove platinum from the vault permanently until Plaintiffs received payment and issued a written confirmation of release.

In February 2016, Plaintiffs decided to reduce the volume of platinum in the vault because C.R. Metals was purchasing less than anticipated. However, it was determined upon removal that the weight of platinum that Brink's represented was in the vault did not match with the weight of the platinum on the inventory list. Specifically, the weight was only 72 pounds when it should have weighed 330 pounds. Plaintiffs had the vault sealed and locked down, pending an immediate investigation.

Plaintiffs perfected their security interest in C.R. Metals' and C.R. Hill's assets by filing a UCC Financing Statement with the Michigan Department of State on February 18, 2016.[1] *See* Dkt. No. 1-6, p. 1 (Pg. ID No. 52). On February 22, 2016, one of Plaintiff's employees, along with Brink's employees and two retained experts, entered the vault. Their investigation determined that the vault contained substantially less platinum than the inventory confirmations previously received from Brink's. Two days later, Plaintiffs notified Brink's of the loss, providing documentation about the weights and serial numbers of the 50 bars of platinum Plaintiffs had in the vault. Further investigation determined that Defendants had

---

[1] C.R. Hill argues that it should not be named as a debtor on the UCC Financing Statement because it was never a party to the Security Agreement. Dkt. No. 15, p. 12 (Pg. ID No. 152).

previously entered the vault and removed large amounts of platinum for processing into alloy, but instead of returning commercial grade platinum alloy, Defendants returned metal rods comprised of tin, copper and other relatively worthless scrap metals.

Defendant C.R. Hill alleges that only Gregory Koukoudian "was authorized to enter the Detroit Vault and remove platinum." Dkt. No. 15, p. 15 (Pg. ID No. 155). Defendant Gregory Koukoudian himself also indicates that a criminal investigation involving platinum in the Detroit Vault involves only him and not Defendants Deborah and Renee Koukoudian. *See* Dkt. No. 32.

In total, Plaintiffs allege that Defendants removed 4000 ounces of platinum from the vault, and then sold the platinum to fund their ongoing business operations and personal expenses. Plaintiffs estimate their losses at over $4 million dollars. Dkt. No. 1, p. 14 (Pg. ID No. 14).

### III. DISCUSSION

#### A. Defendants' Motion to Stay Proceedings

On May 19, 2016, Defendant Gregory Koukoudian filed a Motion to Stay Proceedings until "the conclusion of the parallel criminal investigation and potential criminal action pending against [him]." Dkt. No. 32. Koukoudian moved to stay this civil action in order to preserve his Fifth Amendment right against self-incrimination in parallel criminal proceedings. *Id.* No indictment existed against

Gregory Koukoudian at the time of filing. *Id.* at 5 (Pg. ID No. 304). However, an investigation was already underway involving the same $4 million of platinum involved here. *Id.* at 6 (Pg. ID No. 305). An information was filed against Gregory Koukoudian on July 21, 2016, including the same allegations at issue in the present case, with both Auramet and ICBC listed as victims.

Defendants C.R. Hill and Deborah Koukoudian filed a Concurrence in Motion to Stay on May 27, 2016. Dkt. No. 35.

### i. Legal Standard

The Sixth Circuit has stated that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). District courts have "broad discretion" in determining whether to stay a civil action while a criminal action is pending. *Id.* There is nothing in the Constitution or elsewhere that requires a court to issue a stay, so it remains "an extraordinary remedy." *Id.*

In evaluating whether to stay a civil action while a criminal action is pending, courts consider and balance the following factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;

2) the status of the case, including whether the defendants have been indicted;

3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

4) the private interests of and burden on the defendants;

5) the interests of the courts; and

6) the public interest.

*Id.* (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)). In addition to these factors, district courts "should consider 'the extent to which the defendant's [F]ifth [A]mendment rights are implicated.' " *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). The most important factor is the balance of the hardships, but " '[t]he district court must also consider whether granting the stay will further the interest in economical use of judicial time and resources.' " *Id.* (quoting *International Brotherhood of Electric Workers, Local Union No. 2020, AFL-CIO v. AT & T Network Systems*, 879 F.2d 864 (6th Cir. July 17, 1989)).

Ultimately, the burden is on the party seeking the stay to show there is "pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Environmental Council v. U.S. Dist. Court, Southern Dist. Of Ohio, Eastern Div.*, 565 F.2d 393, 396 (6th Cir. 1977).

*ii. Analysis*

As a preliminary matter, the Court notes that the status of the case has recently changed. While Gregory Koukoudian had not been charged as of the time parties briefed the motion, he has since been charged in an information before Judge Mark Goldsmith in this district. The allegations asserted in the Information mirror the allegations before the Court in the present civil case.

It has been noted by courts that "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Chao*, 498 F. Supp. 2d at 1037 (quoting *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980)). Since there is significant overlap between the criminal and civil cases, and criminal proceedings have begun against Gregory Koukoudian, the first two factors favor a stay. *See E.M.A. Nationwide*, 767 F.3d at 627.

As to the third and fourth factors, the Court must balance the hardships by weighing the harm Plaintiffs would suffer from the issuance of a stay against the harm that Defendants would suffer from the denial of a stay. *See E.M.A. Nationwide*, 767 F.3d at 627. Plaintiffs argue that a delay will deny them access to evidence and witnesses. Dkt. No. 40, pp. 11–12 (Pg. ID No. 421–22). Defendants countered during the hearing that fears of memory loss are misplaced, as the

evidence in this case is largely paper-based. Further, Defendant Greg Koukoudian argues that he is at risk of self-incrimination if a stay is not issued. If he defends himself by answering requests in discovery, he runs the risk of having the information used against him in the criminal proceedings. On the other hand, if he exercises his Fifth Amendment rights, he forgoes "any meaningful defense to the civil claims." Dkt. No. 32, p. 8 (Pg. ID No. 311). Defendants C.R. Hill and Deborah Koukoudian have not alleged any particular hardship to them.

Plaintiffs' concerns about the quality of evidence are negligible if the Court limits the duration of the stay. A 90-day delay should not have a significant impact on witness memory. Defendant Greg Koukoudian, on the other hand, will not be able to defend himself adequately in the civil case without incriminating himself. The right against self-incrimination is a foundational protection that individuals have against the government. *See Miranda v. State of* Arizona, 384 U.S. 439, 460 (1966) ("the constitutional foundation underlying the privilege [against self-incrimination] is the respect a government . . . must accord to the dignity and integrity of its citizens"). With a 90-day stay, Defendants' hardship concerns outweigh Plaintiffs'.

The fifth and sixth factors consider the interest of the courts and the public interest. *E.M.A. Nationwide*, 767 F.3d at 627. The Court finds that a stay of the civil proceedings "will further the interest in economical use of judicial time and

resources." *Id.* at 628 (internal quotation marks and citation omitted). As other courts have noted in comparable proceedings, "[t]he resolution of the criminal proceedings may serve to expedite the civil proceedings, avoiding the needless expense of judicial time and resources." *Stockwell v. Hamilton*, No. 15-11609, 2016 WL 3438108, at *3 (E.D. Mich. June 23, 2016) (quoting *SEC v. Abdallah*, No. 1:14-CV-1155, 2016 WL 397970, at *4 (N.D. Ohio Feb. 2, 2016)). The public interest does not favor either party, as concerns for justice will be dealt with primarily in the criminal case.

In short, the balancing of factors in the present case favors staying this civil action for a limited duration of time. Therefore, the Court is **GRANTING** Defendants' Motion to Stay [32] and is **STAYING** this action for 90 days. The stay will apply to all Defendants in order to prevent needlessly duplicative proceedings. Any of the parties to this lawsuit are free to petition the Court to lift or modify the stay should there be a change in circumstances warranting such action.

### B. Plaintiffs' Motion for Immediate Possession of Collateral Prior to Final Judgment

In their Motion for Immediate Possession, Plaintiffs request that the Court issue an order that grants them immediate possession of any and all of Defendants

C.R. Metals' and C.R. Hills' assets that were pledged to Plaintiffs as collateral in the Supply Agreement ("Possessory Collateral"). *See* Dkt. No. 6.

Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provide for seizing a person or property to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a). Michigan Court Rule 3.105, entitled "Claim and Delivery," sets forth one of Michigan's methods for seizing property pending final judgment. It states, in pertinent part;

> Claim and delivery is a civil action to recover (1) possession of goods or chattels which have been unlawfully taken or unlawfully detained, and (2) damages sustained by the unlawful taking or unlawful detention.

Mich. Ct. R. 3.105(A). "After the complaint is filed, the plaintiff may file a verified motion requesting possession pending final judgment," subject to two requirements. Mich. Ct. R. 3.105(E)(1). First, the motion must "describe the property to be seized." *Id.* Second, the motion must "state sufficient facts to show that the property described will be damaged, destroyed, concealed, disposed of, or used so as to substantially impair its value, before final judgment unless the property is taken into custody by court order." *Id.* At a subsequent hearing on the

motion, the plaintiff must then prove that its "right to possession is probably valid." Mich. Ct. R. 3.105(E)(b)(i).

At present time, the parties are still adhering to an agreement that limits Defendants' ability to access funds and conduct business. *See* Dkt. No. 19. This decreases the likelihood of damage, destruction, concealment, or disposal of assets. Further, Defendants noted during the hearing that they are also prohibited from disposing of assets by orders from the divorce proceedings between Gregory and Deborah Koukoudian, and the criminal proceedings against Gregory Koukoudian. Accordingly, the Court finds that this matter is better addressed after completion of the stay. The Court will hold the Motion for Immediate Possession of Collateral in abeyance for 90 days.

### C. Defendant Renee Koukoudian's Request for Rule 11 Sanctions

Defendant Renee Koukoudian has also asked the Court to levy Rule 11 sanctions against Plaintiffs for including her in their Ex-Parte Motion for Temporary Restraining Order and Preliminary Injunction. Dkt. No. 18. She alleges that Plaintiffs' claims against her were based on an "unfounded belief" that she was a part of the conspiracy. *Id.* However, Renee Koukoudian has not established that Plaintiffs' beliefs about her involvement were "objectively unreasonable." *See Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 510 (6th Cir. 2014). Additionally, as of August 1, 2016, Renee Koukoudian has been voluntarily

dismissed from the case. *See* Dkt. No. 48. Her counsel did not attend the hearing to argue on her behalf. The Court finds that Rule 11 sanctions are not appropriate in this case.

### IV. CONCLUSION

For the reasons discussed herein, the Court will **GRANT** Defendant Gregory Koukoudian's Motion for Stay of Proceedings [32] and issue a stay of 90 days. Additionally, the Court will hold the Motion for Immediate Possession of Collateral Prior to Final Judgment [6] and ICBC's Motion to Intervene [44] in abeyance for 90 days. The Court will **DENY** Defendant Renee Koukoudian's request for Rule 11 Sanctions.

The Court will conduct a status/scheduling conference on Monday, November 7, 2016 at 3:00pm.

IT IS SO ORDERED.

Dated: August 2, 2016                    s/Gershwin A. Drain
                                         GERSHWIN A. DRAIN
                                         United States District Judge

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **August 2, 2016.**

                                  s/Shawna Burns on behalf of Tanya R. Bankston
                                  TANYA R. BANKSTON
                                  Case Manager & Deputy Clerk